IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA L. GOLKOW, | : | CIVIL ACTON |
| | : | NO. 07-3355 |
| v. | : | |
| | : | |
| ESQUIRE DEPOSITION | : | |
| SERVICES, LLC | : | |

O'Neill, J.                                                                                                    September__, 2009

## **MEMORANDUM**

Plaintiff Linda L. Golkow filed a complaint against defendant Esquire Deposition Services, LLC for breach of contract and an accounting with respect to certain commissions plaintiff alleges she is owed for generating business for defendant pursuant to an oral contract. Before me now are defendant's motion for summary judgment and plaintiff's response.

## BACKGROUND

At issue is plaintiff and defendant's oral agreement with respect to plaintiff's rate of compensation for new business that she generated for defendant.  Beginning around September 2005, Mr. Robert Ackerman, the national account manager and then-director of defendant's Pennsylvania, New Jersey and Delaware division, entered into an oral arrangement with plaintiff whereby she would receive 25% of revenues after reporter's expenses (RARE) on new business that she generated.  The agreement had no fixed term.  Plaintiff regularly received her commission checks from defendant on the twenty-fifth of each month which were accompanied by a commission report.  This arrangement continued  through August 2006 without any apparent incident.

In mid-September 2006, defendant arranged to have a meeting with plaintiff, the purpose

of which was to discuss the terms of a new financial arrangement.[1]  A few days prior to the meeting, plaintiff and Mr. Ackerman had a conversation about the issues to be discussed at the upcoming meeting.[2]  The parties did not reach a consensus as to the terms of a new agreement at the meeting or thereafter.

On September 25th, just a few days after the meeting, plaintiff received a check for commissions earned in August and the customary commission report which continued to reflect the 25% commission rate.  However, plaintiff received her commission check for the month of September on November 10th (instead of the customary October 25th) without a commission report.  The check for September reflected a commission rate of 12.5%.  She raised the issue of the reduced rate with Mr. Ackerman.  Checks continued to arrive at the reduced rate until plaintiff terminated the agreement on January 9, 2007.  Defendant also deducted previous commission payments that it had made to plaintiff from some of these checks in accordance with a policy it had of not paying commissions when clients failed to pay their invoices.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[1] Whether defendant communicated an intent to terminate or modify the agreement at this meeting, or merely set forth a proposal for new terms to the agreement is the subject of debate between the parties and will be discussed at length below.

[2] Again, whether Mr. Ackerman communicated to plaintiff that defendant was terminating or modifying the current arrangement or merely stated that a proposal was to be set forth at the upcoming meeting is a point of debate.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

DISCUSSION

In her complaint, plaintiff alleges that defendant breached its oral agreement with plaintiff beginning in November 2006 when it began paying her commissions for generating new business at a rate of 12.5% rather than 25%. Defendant responds that the agreement it had with plaintiff to pay her at the rate of 25% was unilateral and that it effectively revoked the former agreement. Furthermore, plaintiff alleges that defendant wrongfully withheld certain commissions. Defendant moves that both issues related to the breach of contract claim be dismissed, along with plaintiff's claim for an accounting. For the reasons set forth below, I will grant defendant's motion to dismiss the claim for an accounting, but deny defendant's motion with respect to the breach of contract action.

    I.    <u>Breach of Contract</u>

Under Pennsylvania law,[3] a breach of an oral contract claim requires the plaintiff to prove "the existence and terms of the oral contract, defendant's breach of the contract, and resulting damages." <u>Hanna v. SE Holdings, LLC</u>, No. 04-1294, 2005 U.S. Dist. LEXIS 24407, at *31 (W.D. Pa. Oct. 20, 2005), <u>citing</u> <u>Idell v. Falcone</u>, 235 A.2d 394, 396 (Pa. 1967). The Pennsylvania Supreme Court stated, "[i]n order that a contract may be enforceable the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty." <u>Seiss v. McClintic-Marshall Corp.</u>, 188 A. 109, 110 (Pa. 1936). "Once it is determined that the parties intended to form a binding agreement, certainty of terms is important only as a 'basis for determining the existence of a breach and for giving an appropriate remedy.'" <u>Browne v. Maxfield,</u> 663 F. Supp. 1193, 1198 (E.D. Pa. 1987),

---

    [3]    The parties do not dispute that Pennsylvania law applies.

4

quoting Restatement (Second) of Contracts § 33.

Defendant argues that the agreement existing between plaintiff and defendant at the time of the September 2006 meeting was unilateral. Gnames Advantage, L.P. v. CPC Assocs., No. 00-4032, 2002 U.S. Dist. LEXIS 23490, at *10-9 (E.D. Pa. Nov. 20, 2002) summarizes Pennsylvania law on the formation of unilateral contracts. A unilateral contract is proven if the plaintiff can show that "one party made a promissory offer, which calls for the other party to accept by rendering performance." Id., quoting Bauer v. Pottsville Area Emergency Med. Serv., 758 A.2d 1265, 1269 (Pa. Super. 2000). The offer must contain "some language of commitment or some invitation to take further action without further communication." Id., quoting Bourke v. Kazaras, 746 A.2d 642, 644 (Pa. Super. 2000). The parties' course of conduct provides context for evaluating whether the offer has been accepted. Id., citing Accu-Weather v. Thomas Broadcasting System, 625 A.2d 75, 78 (Pa. Super. 1993).

> A. There exists a genuine issue of material fact as to whether the terms of the oral agreement could be modified or terminated unilaterally or required mutual consent.

Defendant and plaintiff agree that the arrangement in place prior to September 2006 was an oral contract of no fixed duration. Defendant argues the agreement was unilateral: plaintiff provided court reporting services and generated new business in response to defendant's open offer to compensate her at a commission rate of 25%. Defendant argues that since the agreement was unilateral defendant was free to terminate or modify the agreement at any time and that the prior agreement could be revoked without plaintiff's consent. Plaintiff on the other hand argues that the oral agreement provided that the agreement could not be modified until and unless the parties reached a new agreement.

The agreement was not in writing and neither party presented any prior course of dealing demonstrating whether a modification or termination could be unilaterally imposed or required mutual agreement. Defendant cites several cases for the proposition that a unilateral contract may be revoked by the offeror without the other party's consent prior to performance. An offer to enter into a unilateral contract, generally, may be revoked by the offeror at any time prior to the other party's performance. First Home Sav. Bank, FSB v. Nernberg, 648 A.2d 9, 15 (Pa. Super. 1994). However, whether the other party's consent is needed to terminate a unilateral contract will depend on the agreement between the parties on this term. See Strang v. Wikowski, 82 A.2d 624, 626 (Conn. 1951), finding that the unilateral contract was "subject to termination only by mutual consent." Plaintiff bears the burden of demonstrating the existence and terms of the contract.[4]

While defendant does not dispute that a contract prior to September 2006 existed, the issue of whether that agreement required mutual assent to modify or terminate its terms is in dispute. In support of her position that the terms of the agreement required the consent of both parties before it could be modified or terminated, plaintiff points to defendant's PowerPoint presentation slides from the mid-September 2006 meeting. Those slides describe the new terms as only a "proposal," and do not contain the new rate of 12.5%. Defendant does not direct me to

---

[4] While some case law in this district finds that "[t]he existence and terms of an oral contract must be established by clear and precise evidence," Browne, 663 F. Supp. at 1197, internal quotation marks omitted, the court in Zielonka v. Temple University, No. 99-5693, 2001 WL 1231746, at *9 (E.D. Pa. Oct. 12, 2001), found that "an employment related oral contract may be established by a preponderance of the evidence." Since I find that the evidence presented by Ms. Golkow is sufficient to meet either standard, I find it unnecessary to determine whether a case involving an oral agreement with an independent contractor requires proof of its terms by clear and precise evidence or a mere preponderance of the evidence.

anything in its slides from that presentation which evidences a clear communication of termination. A jury could reasonably find that the oral agreement did not provide that either party could terminate or modify the agreement unilaterally at anytime because defendant did not act accordingly.

The portion of plaintiff's testimony to which defendant cites in support of its position that it could act unilaterally states that defendant merely "wanted to" reduce the commission and make other changes. Additionally, defendant cites to testimony by plaintiff that a representative of defendant stated at the September 2006 meeting that, "We have to come up with a deal that works for us." Defendant's Exh. A, 64:13. In fact, defendant's own motion for summary judgment refers to the change as a proposal. Defendant's Motion for Summ. J., p. 3. Again, a jury could reasonably find that if defendant thought at the time it could act unilaterally then it would have stated so explicitly, rather than expressing wants and proposals.

Furthermore, subsequent to the commencement of this litigation, defendant's general counsel stated in a letter to plaintiff's counsel that defendant's communications to plaintiff about the commission rates were part of a process of negotiating a "mutually satisfactory agreement" between the parties.[5] These statements by defendant's general counsel provide evidence from which a jury could reasonably infer that mutual agreement, as plaintiff argues, rather than unilateral action was needed to effectuate the change.

Drawing all reasonable inferences in favor of plaintiff, a jury could find that the parties' oral contract required that a termination or modification of the agreement could only be made

---

[5] "Given Ms. Golkow's importance to the Philadelphia office and Esquire's desire to continue to work with Ms. Golkow, it had hoped to move back to a mutually satisfactory arrangement through a negotiated process." Plaintiff's Exh. D, p. 1.

with the consent of both parties. While defendant has pointed to evidence suggesting a mutual agreement was not required, including plaintiff's own statements,[6] plaintiff has produced enough evidence to demonstrate that this issue remains a material issue of fact.

>   B.   Whether defendant effectively communicated its intent to modify or terminate the agreement remains a material issue of fact.

Even if the oral contract permitted defendant to terminate the agreement without plaintiff's consent, plaintiff also argues that defendant failed to terminate the agreement unequivocally. An offeree's power to accept an offer terminates upon: (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. Restatement (Second) of Contracts § 36. Defendant argues that it effectively revoked its offer to continue the contract at the 25% rate by proposing a new counter-offer. Defendant conflates two separate methods of terminating an offer. The offeree may terminate an offer by proposing a counter-offer; however, neither defendant nor plaintiff suggest that plaintiff ever made a counter-offer to defendant's proposal.

Alternatively, the offer may terminate by defendant's clear and unequivocal revocation of the offer. As with bilateral contracts, a party seeking to terminate a unilateral contract must provide "clear and unambiguous" notice. Maloney v. Madrid Motor Corp., 122 A.2d 694, 696 (Pa. 1956). Thus, "where the conduct of one having the right to terminate is ambiguous, he will be deemed not to have terminated the contract." Id. Defendant argues that it effectively

---

[6] In one portion of Ms. Golkow's deposition testimony counsel asked whether there was any "restriction" upon her or defendant from terminating the agreement, and she responded, "No, I don't think so." Plaintiff's Exh. A., 26: 1:9. However, this response is both qualified and does not address the issue of modification.

terminated the offer to pay the 25% commission rate.[7] Plaintiff has presented enough evidence to create a material issue of fact as to whether defendant clearly and unequivocally terminated its offer to compensate her at 25%.

In reviewing the facts in the light most favorable to the nonmoving party, defendant has failed to demonstrate that it clearly communicated its intent to terminate the contract. Plaintiff's and Mr. Ackerman's depositions reveal that their communications prior to the September meeting referred to the new terms as a proposal. Similarly, the testimony of Mr. Ackerman and the language of the PowerPoint confirm that defendant referred to the changes as a "proposal" to make certain changes. Defendant has not presented any evidence, including deposition testimony or otherwise, showing that one of its authorized representatives stated clearly and unequivocally that it intended to terminate the current arrangement with plaintiff if she did not accept the new terms. Indeed, after making its proposal at the September meeting, which plaintiff did not accept, defendant did not cancel the existing agreement but rather continued to give plaintiff work.

Furthermore, upon learning that plaintiff did not agree with the commission rate reduction, the only communication the record reveals that she received from defendant was through Mr. Ackerman who informed her that the rate "should be 25[%]." Defendant does not provide any evidence that Mr. Ackerman lacked authority to bind the company either to the

---

[7] While defendant predominantly maintains the position that its offer was replaced with a new proposal to pay a 12.5% commission rate, at one point in its motion it asserts that "Esquire had no obligation to pay any commissions after [the date the meeting took place]." Presumably it is this statement which causes plaintiff to argue in its answer that a contract existed based on either the theory of equitable or promissory estoppel. I do not find it necessary to address plaintiff's arguments on this point here since I find that there are significant material issues of fact preventing the dismissal of her breach of contract claims.

initial contract or in his subsequent assurances that plaintiff would receive the full 25%.  An agent has the power to bind the principal when "the principal has manifested its intent to be bound by the agent." Browne, 663 F. Supp. at 1198, citing Restatement (Second) of Agency § 7.  Plaintiff has presented evidence showing Mr. Ackerman may have had actual authority to bind the defendant.  A jury could reasonably find that since Mr. Ackerman had always negotiated the commission rate with plaintiff and defendant was aware of this that therefore defendant had entrusted this duty to Mr. Ackerman.  Furthermore, a jury could find that Mr. Ackerman possessed apparent authority to bind defendant.  "The test for determining whether an agent possesses apparent authority is whether 'a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise.'" Universal Computer Systems, Inc. v. Medical Service Assoc., 628 F.2d 820, 823 (3d Cir. 1980), quoting Apex Financial Corp. v. Decker, 369 A.2d 483, 485-86 (Pa. Super. 1976).  Finally, a jury could also find that Mr. Ackerman was defendant's agent by estoppel.  Thus, "the principal is bound by the acts of its agent because the principal has a duty under the circumstances to correct a third party's misapprehension that an agent is acting on its behalf and the principal has failed to satisfy that duty." Browne, 663 F. Supp. at 1198, citing Restatement (Second) of Agency § 8B.

Here, a jury could reasonably find that plaintiff's and Mr. Ackerman's testimonies as to their conversations prior to and after the September meeting, combined with the PowerPoint slides' use of the word "proposal" to describe the new terms and Mr. Ackerman's assurances that plaintiff would receive the full 25% point to the fact that the defendant did not clearly communicate its intent to revoke the standing unilateral contract at 25% commission rate with a

new offer of 12.5%.  As a dispute exists between plaintiff and defendant with respect to the adequacy of defendant's revocation, I will deny defendant's motion for summary judgment on the breach of contract claim.  Defendant has failed to point to any statements made by any of its authorized representatives or to any documents which clearly indicate that it intended to reduce plaintiff's commission from 25% to 12.5% immediately.[8]  Since plaintiff has stated that Mr. Ackerman continued to represent that the rate was still 25% and he would resolve the discrepancy, it is reasonable to believe that plaintiff continued to perform under the unilateral contract with the expectation that she would be paid 25%.

### C. The "Tropicana" Commissions

Plaintiff claims as part of her breach of contract count that defendant owes her commissions which were first advanced by defendant and then later deducted from subsequent commission checks.  These commissions were for work performed by plaintiff prior to her termination of the agreement on January 9, 2008 on a case involving the Tropicana garage collapse.  Both parties agree that the terms of their oral agreement required defendant to pay plaintiff on amounts invoiced, but that if a customer did not pay its invoice defendant would then deduct the commissions advanced from future commission checks.  However, the parties disagree on two aspects of this term: 1) what was to happen to commissions related to unpaid

---

[8] Green v. Edward J. Bettinger Co., 608 F. Supp. 35 (E.D. Pa. 1984) and Maloney v. Madrid Motor Corp., 385 Pa. 224 (Pa. 1956), upon which defendant relies, are distinguishable. First, neither case involved a unilateral agreement that required the mutual consent of the parties to terminate or modify it, and in both of those cases the notification of termination was clear and unambiguous.  Similarly, EFCO Imps. V. Halsobrunn, 500 F. Supp. 152 (E.D. Pa. 1980), is distinguishable as it not only involves an express bilateral contract, but also a clear statement by the defendant to terminate the contract and statements by the plaintiff that it was dissatisfied with the contract.

invoices in the event of a termination of the contract; and 2) which party was responsible if the nonpayment was unrelated to anything plaintiff had done.

Plaintiff argues that it was normal for Mr. Ackerman to "waive" the deduction if the customer's nonpayment was unrelated the plaintiff's work. In her deposition she testified that Tropicana's issues with defendant were unrelated to her work. However, plaintiff fails to present any evidence, such as testimony by Mr. Ackerman or prior examples of this policy put in place, demonstrating that this was in fact the policy.

Plaintiff also argues that defendant was subsequently paid for the Tropicana work. Assuming that defendant was paid,[9] there exists a genuine issue of material fact: did the terms of the oral agreement require defendant to pay commissions on invoices which were paid subsequent to the oral contract's termination, or was defendant only bound to pay commissions on paid invoices as of the date of termination?

Defendant points to Sendi v. NCR Comten, Inc., 619 F. Supp. 1577 (E.D. Pa. 1985) in support of its position that as a matter of law commissions need not be paid after termination of a contract. However, that case is easily distinguished as it involved a written contract that expressly stated, commissions "are not earned until paid" and that employees "forfeit all rights to commissions which have not been paid at termination of employment." Id. at 1578. Similarly in Shannon v. Keystone Info. Sys., Inc., No. 92-6562, 1993 U.S. Dist. LEXIS 10855 (E.D. Pa. Aug. 4, 1993), the court looked to an existing written agreement that guided payment of commissions. Here, however, there is no written agreement and no clear communication as to the policy on

---

[9] While it is not clear from the records produced by defendant and attached as an exhibit to plaintiff's answer that defendant was actually paid, I will assume that the invoices were paid.

payment of commissions after termination.

Since I find that plaintiff has presented sufficient evidence to support her claim that defendant made these deductions and there exists a genuine issue of material fact regarding this contract term, I will deny defendant's motion for summary judgment on this aspect of the breach of contract claim.

II.     Accounting

Plaintiff's second count is for an accounting, an equitable remedy which she seeks in order to remedy the same damages alleged as part of her breach of contract claim. Where a plaintiff has an adequate remedy at law, an accounting is unavailable. Pa. Ship Supply v. Fleming Int'l, 113 F. Supp. 2d 760, 764 (E.D. Pa. 2000); Arrowroot Natural Pharmacy v. Standard Homeopathic Co., No. 96-3934, 1998 WL 57512, at *12 (E.D. Pa. Feb. 10, 1998). Furthermore, "[a]n accounting request is not a substitute for plaintiffs' obligation to establish their damages through discovery." Arrowroot, 1998 WL 57512, at *12.

Not only does plaintiff have an adequate remedy at law in her breach of contract claim, in fact, plaintiff has already uncovered some of the information she seeks from an accounting through the discovery process and from a review of her own files. See Plaintiff's Exh. I, Accounting of Records of Business Attributable to Ms. Golkow, and Exhs. J, K and L, RARE Sales Commission Reports from October, November and December 2006. I will grant defendant's motion for summary judgment in part and dismiss plaintiff's claim for an accounting.